IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

PATRICK DANIEL KENNY,

        Petitioner,

   v.

GRACE-ANNE MCCANN DAVIS, *et al.*,

        Respondents.

Case No. 3:21-cv-00023-SLG

## ORDER RE PETITION

Petitioner Patrick Kenny initiated this action in February 2021 seeking an order requiring his minor child to be returned to the Republic of Ireland pursuant to the Hague Convention on the Civil Aspects of International Child Abduction. Respondents are the mother of the child and her parents; they filed an opposition to the petition at Docket 13, to which the petitioner responded at Docket 18. An evidentiary hearing on the petition was held on April 30, 2021.

## FINDINGS OF FACT

Based on the evidence presented by the parties and the stipulation of facts filed by the parties at Docket 36, the Court now makes the following FINDINGS OF FACT:

1. Patrick Kenny and Grace Davis were married on December 21, 2016 in Palmer, Alaska. Thereafter, they moved to and resided in the Republic of Ireland.

2. Grace Davis was born and raised in Palmer, Alaska by her parents James and Megan Davis. She is a United States citizen.

3. Patrick Kenny was born and raised in Ireland. He is a citizen of the Republic of Ireland.

4. The parties' child was born in May 2019 in the Republic of Ireland.

5. The child has dual citizenship in the United States and Ireland.

6. Patrick Kenny, Grace Davis, and the child travelled to Alaska on March 10, 2020. Grace Davis left behind some of her personal items in Ireland; she prioritized the child's belongings in the limited luggage she could bring.

7. Grace Davis began working at her mother's business in Alaska in March 2020. Patrick Kenny was unable to work in the United States on his visa, but was doing some research about becoming a real estate agent in Alaska.

8. The family moved into the home of Megan and James Davis in Palmer, Alaska.

9. Patrick Kenny entered the United States through the VISA Waiver Program which allows up to a 90-day stay in the United States and requires proof of intent to return before its expiration, which is typically a return ticket.

10. Patrick Kenny applied for Permanent Residency with the United States on April 30, 2020; he also applied for an Employment Authorization at that time. Megan Davis sponsored Mr. Kenny.

11. On or about May 28, 2020, there was an altercation between Mr. Kenny and Grace Davis's brother at the Davis home.

Case No. 3:21-cv-00023-SLG, *Kenny v. Davis, et al.*
Order re Petition
Page 2 of 8
Case 3:21-cv-00023-SLG   Document 42   Filed 05/10/21   Page 2 of 8

12. Over the next few days, Grace Davis began looking for apartments in Southcentral Alaska for Mr. Kenny, herself, and their child.

13. On May 31, 2020, Mr. Kenny was interviewed by an Alaska State Trooper about the May 28 altercation. When the trooper asked Mr. Kenny if he planned to stay in Alaska, he responded in the affirmative and told the trooper that he was working on adjusting his immigration status so that he could remain in Alaska. The trooper told Mr. Kenny that he would be referring the case to the District Attorney's office, which would decide whether to prosecute. Mr. Kenny testified that on that day, he had no intention of leaving the United States. The Court finds Grace Davis and Patrick Kenny had a shared parental intent to reside with their child in Alaska indefinitely beginning when they arrived in March 2020 and continuing through May 31. Grace Davis has continued since that time to intend to reside in Alaska indefinitely.

14. On June 1, 2020, Mr. Kenny decided to leave the Davises' home; Grace Davis assisted him in packing up. Megan Davis and Grace Davis drove with Mr. Kenny to Anchorage; he checked into a hotel in Anchorage. The child stayed at the Palmer home with Mr. Davis. Grace Davis refused to remain in a marital relationship with Patrick Kenny, who decided to return to Ireland. Mr. Kenny at least implicitly, if not explicitly, consented to the child remaining in Alaska with Grace Davis at that time.

Case No. 3:21-cv-00023-SLG, *Kenny v. Davis, et al.*
Order re Petition
Page 3 of 8
Case 3:21-cv-00023-SLG   Document 42   Filed 05/10/21   Page 3 of 8

15. The Court heard conflicting testimony as to whether Mr. Kenny sought to take the child with him back to Ireland at that time: Mr. Kenny testified he asked to take the child; the Davises testified he did not ask to take the child. The Court finds by a preponderance of the evidence that Mr. Kenny did not ask to take the child to Ireland in early June 2020. The Court reaches this determination based primarily on the fact that the content of the texts messages between Grace Davis and Mr. Kenny on June 1 and June 2 is far more consistent with the Davises' testimony regarding Mr. Kenny's intention with respect to the child at that time. On June 1 or 2, Mr. Kenny wrote, "I just want you [Grace Davis] and [the child] to be happy and safe." This statement is inconsistent with wanting the child to immediately return to Ireland. Also on June 1 or 2, Mr. Kenny wrote to Ms. Davis that the child's "father loves him more than anything. I want him to be told the truth when he asks." The child had just turned one year old at that time; he would not be likely to ask about his father for many months if not years. This statement is inconsistent with wanting the child to immediately return to Ireland. Grace Davis responded that the child "will think very highly of his father." After Grace Davis indicated she was unwilling to meet with Mr. Kenny and the child without her mother also present, Mr. Kenny did not request to take the child with him. Rather, he twice wrote "Goodbye" to Grace Davis on June 2. Apart from one additional written communication

on or about June 5, 2020 that is not in the record, there has been no contact between Mr. Kenny and the Davises since then.

16. Shortly after he returned to Ireland, Mr. Kenny filed a Hague Convention Return Application with the Ireland Civil Authority, seeking the child's return to Ireland under the Hague Convention. Grace Davis received a letter from the U.S. State Department notifying her that Mr. Kenny sought to have the child returned to Ireland on or about July 9, 2020.

17. The retention date in this case was July 9, 2020, as that is the date on which Mr. Kenny clearly and unequivocally communicated through the State Department that he sought to have the child returned to Ireland.

18. Based on the totality of the circumstances, the Court finds that the place of habitual residence of the child immediately prior to July 9, 2020 was Alaska. By that time, the child had lived in Alaska for nearly 4 months – or over one-third of his young life; most of those four months, the child had resided in Alaska pursuant to the shared parental intent of the child's parents.

## CONCLUSIONS OF LAW

1. Under the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), "a child wrongfully removed from her country of 'habitual residence' ordinarily must be returned to that country."[1]

---

[1] *Monasky v. Taglieri*, 140 S. Ct. 719, 723 (2020).

Case No. 3:21-cv-00023-SLG, *Kenny v. Davis, et al.*
Order re Petition
Page 5 of 8
Case 3:21-cv-00023-SLG   Document 42   Filed 05/10/21   Page 5 of 8

"Thus, '[d]etermination of habitual residence is perhaps the most important inquiry under the Convention.'"[2] A child's habitual residence for purposes of the Hague Convention is determined immediately prior to the date of the alleged wrongful removal or retention.[3]

2. The retention date has been identified by the Third Circuit as the "date beyond which the noncustodial parent no longer consents to the child's continued habitation with the custodial parent and instead seeks to reassert custody rights, as clearly and unequivocally communicated through words, actions, or some combination thereof."[4]

3. The Supreme Court recently held that "a child's habitual residence depends on the totality of the circumstances specific to the case."[5] The Court noted that "[b]ecause children, especially those too young or otherwise unable to acclimate, depend on their parents as caregivers, the intentions and

---

[2] *Farr v. Kendrick*, 824 F. App'x. 480, 481 (9th Cir. 2020) (internal quotation marks omitted) (alteration in original) (quoting *Murphy v. Sloan*, 764 F.3d 1144, 1150 (9th Cir. 2009), *abrogated on other grounds, Monasky*, 140 S. Ct. 719).

[3] *See Monasky*, 140 S. Ct. at 726 (noting that while Courts of Appeals have diverged on standards for determining a child's habitual residence, they share a common understanding that "[t]he place where a child is at home, at the time of removal or retention, ranks as the child's habitual residence" (citing *Karkkainen v. Kovalchuk*, 445 F.3d 280, 291 (3d Cir. 2006))); *see also Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001), *abrogated on other grounds, Monasky*, 140 S. Ct. 719) (explaining that when courts apply the Convention, they must ask: "Immediately prior to the removal or retention, in which state was the child habitually resident?"); *In re ICJ*, Case No. 2:20-cv-00457-SAB, 2021 WL 790904, at *4 (E.D. Wash. Jan. 28, 2021) (same); *Redmond v. Redmond*, 724 F.3d 729, 737 (7th Cir. 2013) (same).

[4] *Blackledge v. Blackledge*, 866 F.3d 169, 179 (3d Cir. 2017).

[5] *Monasky*, 140 S. Ct. at 723.

circumstances of caregiving parents are relevant considerations."[6] However, the Supreme Court made clear that "[t]here are no categorical requirements for establishing a child's habitual residence—least of all an actual-agreement requirement for infants."[7] Instead, "a wide range of facts other than an actual agreement, including facts indicating that the parents have made their home in a particular place, can enable a trier to determine whether an infant's residence in that place has the quality of being 'habitual.'"[8] This is a fact intensive inquiry, and a court "must be 'sensitive to the unique circumstances of the case and informed by common sense.'"[9]

4. The burden of proof is on the petitioner to establish, by a preponderance of the evidence, that the child was wrongfully removed or retained from his place of

---

[6] *Id.* at 727; *see also Karkkainen*, 445 F.3d at 296 (explaining that shared parental intent may weigh more heavily in cases involving very young children who "lack[] the ability to truly acclimatize to a new environment" and that "shared parental intent that a very young child will reside in a new country, even for a limited period of time, is sufficient to establish the child's habitual residence in that country"); *Redmond*, 724 F.3d at 746 ("Shared parental intent may be a proper starting point in many cases because '[p]arental intent acts as a surrogate' in cases involving very young children for whom the concept of acclimatization has little meaning." (quoting *Holder v. Holder*, 392 F.3d 1009, 1016–17 (9th Cir. 2004))).

[7] *Monasky*, 140 S. Ct. at 728. This approach avoids allowing disagreement between parents to "create a presumption of no habitual residence for infants, leaving the population most vulnerable to abduction the least protected." *Id.* (internal quotation marks omitted); *see also Redmond*, 724 F.3d at 746 ("In short, the concept of 'last shared parental intent' is not a fixed doctrinal requirement, and we think it unwise to set in stone the relative weights of parental intent and the child's acclimatization. The habitual-residence inquiry remains essentially fact-bound, practical, and unencumbered with rigid rules, formulas, or presumptions.").

[8] *Id.* at 729.

[9] *Id.* at 727 (quoting *Redmond*, 724 F.3d at 744) ("Common sense suggests that some cases will be straightforward: Where a child has lived in one place with her family indefinitely, that place is likely to be her habitual residence.").

Case No. 3:21-cv-00023-SLG, *Kenny v. Davis, et al.*
Order re Petition
Page 7 of 8
Case 3:21-cv-00023-SLG   Document 42   Filed 05/10/21   Page 7 of 8

habitual residence.[10] "The removal or retention is wrongful if done in violation of the custody laws of the child's habitual residence";[11] and at the time of the retention or removal "those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."[12]

5. Given that the child was residing in Alaska, his place of habitual residence in July 2020, and continues to reside in Alaska, the petitioner has not established, by a preponderance of the evidence, that the child has been wrongfully removed or retained from his place of habitual residence.

PETITION DENIED.

The Clerk of Court is directed to enter a Final Judgment accordingly.

Dated this 10th day of May, 2021 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[10] *See* 28 U.S.C. § 9003(e)(1)(A).

[11] *Monasky*, 140 S. Ct. at 723 (citing Hague Convention, Art. 3).

[12] Hague Convention, Art. 3.

Case No. 3:21-cv-00023-SLG, *Kenny v. Davis, et al.*
Order re Petition
Page 8 of 8
Case 3:21-cv-00023-SLG   Document 42   Filed 05/10/21   Page 8 of 8